IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **LINDA CARTER,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-12-1789 |
| **STATE OF MARYLAND** *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM

*I. Background*

Plaintiff Linda Carter filed this case in Maryland state court after she was severely injured by electronic metal detectors during security screenings when she entered the Maryland Circuit Court courthouse in Baltimore City to attend court proceedings relating to her divorce action. Besides the State of Maryland, Carter has sued the Mayor and City Council of Baltimore City (the "City"); Beverly Carter ("B. Carter"), Court Administrator for the Circuit Court for Baltimore City; John Anderson, Sheriff of Baltimore City; Donald Rheubottom, a Captain in the Sheriff's Office of Baltimore City; John and Jane Does 1-20, Deputy Sheriffs and/or Court House Security Officers; and Richard and Jane Roes 1-20, supervisors of John and Jane Does 1-20. (Am. Compl., ECF No. 17.) All Defendants joined in removing the case to federal court. (ECF Nos. 1, 2.)

Pending before the Court are the City's motion to dismiss for failure to state a claim (ECF No. 19) and a similar motion filed by all other Defendants, collectively referred to as the State Defendants (ECF No. 18). These two motions address the amended complaint (ECF No. 17). Previous motions to dismiss (ECF Nos. 7, 15, 16) address the original complaint (ECF

No. 3), which has been superseded by the amended complaint. The previous motions to dismiss will be denied as moot. The City's motion to dismiss will be granted. The State Defendants' motion to dismiss will be granted in part and denied in part.

## II. *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

## III. *Allegations of the Complaint*

According to the complaint's allegations, which are accepted as true for the purpose of deciding these motions to dismiss, Carter had a neuro-transmitter device surgically implanted a few years ago in the mid-thoracic region of her spine to manage pain caused by her disability. She must avoid exposure to electromagnetic fields at security checkpoints by requesting disability accommodations in the form of alternative security screening. She has been issued a disability identification card requiring alternate security screening to protect her from exposure to electromagnetic fields produced by metal detectors, metal detecting wands, or similar devices. Twice, she entered the Baltimore City Circuit Courthouse to attend court proceedings in her divorce action and was subjected to electronic metal detectors, which caused her to be electrically shocked.

The first occasion was on November 17, 2011, when Carter entered the courthouse for a scheduling conference. She presented her medical identification card to a court security officer, John Doe 1, and explained that she is disabled and needs alternate security screening because of her implanted medical device. John Doe 1 "insisted that Ms. Carter squeeze around the metal detector," which exposed her to electromagnetic fields and caused her to experience extreme pain in her back. (Am. Compl. ¶ 30.) She collapsed from pain, but was provided no assistance such as emergency medical services.

The second occasion was on March 28, 2012, when Carter came to the courthouse to attend a hearing. Again, she presented her medical identification card to another court security officer, John Doe 2, and explained that her disability requires alternate security screening because of her implanted medical device that cannot be subjected to electromagnetic fields emitted by metal detectors or metal detecting wands. Carter also informed John Doe 2 of her experience on November 17, 2011. John Doe 2 assured Carter she would be patted down and not subjected to any security screening involving a metal detector or metal detecting wand. Carter proceeded to the adjacent screening area where she was introduced to John Doe 3, to whom she began explaining all that she had just communicated to John Doe 2. John Doe 2 joined Carter in her explanation and explained to John Doe 3 that he had already seen her medical identification card and that she was to receive a disability accommodation in the form of a policy modification, *i.e.*, a security pat-down with no metal detector or metal detecting wand. John Doe 3 agreed. Carter then, as instructed by John Doe 3, lifted her arms for a security pat-down.

> However, suddenly and without warning, John Doe 3 grabbed a metal detecting wand and stated that "it is policy." With that, he ran the metal detecting wand down Ms. Carter's back. And again, Ms. Carter was electronically shocked and collapsed. This time, however, the shocking didn't stop. As she discovered when she was finally able to stand, with each step she took, she experienced an extreme

3

and debilitating electronic shock.  Through all Ms. Carter's pain and suffering in and around Court Security, they kept screening more visitors and never offered her any assistance, including contacting emergency medical services.

(Am. Compl. ¶ 34.)

Carter, with great difficulty, proceeded to the courtroom where the presiding judge called an ambulance for her and advised her to get a lawyer.  She continues to be in great pain, and she alleges the pain only stops when she is not using her legs.  Her complaint asserts twelve causes of action:

1. 42 U.S.C. § 1983 against the City for denial of access to the courts in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), Maryland common law, federal due process, and Maryland Declaration of Rights, Article 19 and Article 24.

2. Section 1983 against B. Carter, Anderson, Rheubottom, and Richard & Jane Roes 1-20 for supervisory liability for denial of federal due process.

3. ADA, Title II, against all Defendants in individual and official capacities.

4. RA, § 504, against all Defendants in individual and official capacities.

5. Section 1983 against all nonentity Defendants in individual and official capacities for denial of federal due process.

6. Maryland Declaration of Rights, Articles 19 and 24, against all nonentity Defendants in individual and official capacities for denial of right of access to the courts.

7. State law claim of negligence against all nonentity Defendants in individual and official capacities for failure to accommodate Carter's disability, to protect her from harm, to monitor themselves and subordinates, and to report suspected misconduct.

8. State law claim of negligent hiring, training, supervision, discipline, and retention against all nonentity Defendants in individual and official capacities other than "Court Security," defined by Plaintiff as Rheubottom, John and Jane Does 1-20, and Richard and Jane Roes 1-20 (Am. Compl. ¶¶ 22-24).

9. State law claim of gross negligence against all nonentity Defendants in individual and official capacities for disregard of rights under federal and state law.

10. State law claim of negligent failure to provide medical care against Rheubottom, John and Jane Does 1-20, and Richard and Jane Roes 1-20 in their individual and official capacities.

11. State law claim of assault and battery against Rheubottom, John and Jane Does 1-20, and Richard and Jane Roes 1-20 in their individual and official capacities.

12. State law claims of *respondeat superior*; Md. Code Ann., State Gov't § 12-104(a)(1); and Maryland Declaration of Rights, Articles 19 & 24, for vicarious liability for the acts of B. Carter, Anderson, Rheubottom, John and Jane Does 1-20, and Richard and Jane Roes 1-20.

Carter seeks compensatory and punitive damages against all Defendants, as well as costs and fees.

## IV. Analysis

### A. City's Motion to Dismiss

Carter asserts that both the State of Maryland and the City of Baltimore are the employers of B. Carter, Anderson, Rheubottom, the Does, and the Roes. (Am. Compl. ¶¶ 10-15.) Maryland law is clear that the City is not the employer of the Sheriff of Baltimore City or any employee of the Sheriff. *Ritchie v. Donnelly*, 597 A.2d 432, 446-47 n.14 (Md. 1991) ("the sheriff of a county is a state employee within the meaning of the statute, § 12-101(6) of the State Government Article"), *cited in Lee v. Cline*, 863 A.2d 297, 265-66 (Md. 2004). *See also Rucker v. Harford County*, 558 A.2d 399, 401-03 (Md. 1989) (recognizing sheriffs and their deputies were state employees despite funding of expenses of sheriffs' offices by local jurisdictions).

The Court Administrator for Baltimore City Circuit Court, B. Carter, is also not a City employee. She is an employee of the judicial branch of Maryland state government and, as such, is also considered a state employee. *See* Md. Code Ann., State Gov't § 12-101(a)(11) (LexisNexis 2009). Carter asserts that the conduct of courthouse security functions was pursuant to City policy, but has alleged no factual content to support her assertion. The Court finds no basis upon which the City may be held liable in this case and, accordingly, will grant the City's motion to dismiss as to all counts. Because Count One was asserted only against the City, it will be dismissed in its entirety.

**B.   42 U.S.C. § 1983 – *Supervisory Liability***

In Count Two, Carter sues B. Carter, Anderson, Rheubottom, and the Roes in their individual and official capacities for negligent supervision of "Court Security," defined by Plaintiff to include Rheubottom, the Does, and the Roes.  To the extent these Defendants are sued in their official capacities as state employees, Count Two must be dismissed against them.  A suit against a Maryland state official in his official capacity is a suit against the State of Maryland, *see Kentucky v. Graham*, 473 U.S. 159, 165-67 & n.14 (1985), and the States are not considered "persons" within the meaning of § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989).[1]

In their individual capacities, these Defendants are suable, but they have asserted various defenses to liability.  First, they argue that Carter has failed to allege that B. Carter, Anderson, or Rheubottom directed or personally participated in deprivation of any rights possessed by Plaintiff.  Second, they assert qualified immunity, and, third, they assert "absolute quasi-judicial immunity."

Supervisory officials may be held liable in appropriate circumstances for constitutional injuries inflicted by their subordinates.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

> Such liability is not based on ordinary principles of *respondeat superior,* but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.  In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:
>
> > (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged

---

[1] The official-capacity state officials asserted Eleventh Amendment immunity *after removing the case* from state court to federal court.  Voluntary removal constitutes a waiver of Eleventh Amendment immunity, *Lapides v. Board of Regents*, 535 U.S. 613, 616 (2002), but any immunities that the State Defendants may claim in Maryland state court travel with them to federal court, *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005).

>   offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (alteration in original) (citations and internal quotation marks omitted).

The Court agrees that Carter's allegations fall short as to the named State Defendants in Count Two. She has simply alleged as to the first element of actual or constructive knowledge the following:

>   Upon information and belief, the Count Two Defendants received complaints about the conduct of Court Security, including those Defendants named in this Complaint, or in the exercise of due diligence would have perceived that Court Security, especially those Defendants named in this Complaint, had exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to disabled visitors such as Ms. Carter.

(Am. Compl. ¶ 61.)

With respect to Carter's specific difficulty of being subjected to electronic metal detection when she should not have been, she has alleged nothing to permit an inference that the State Defendants in Count Two had any actual knowledge or were put on notice of the failure of Court Security officers to accommodate the type of disability that Carter has. She has alleged only that the State Defendants "received complaints about the conduct of Court Security" or that they should have, in the exercise of due diligence, perceived that Court Security had "exhibited conduct or disciplinary problems that posed a pervasive and unreasonable risk of harm to disabled visitors such as [Plaintiff]." Such "complaints" could have been about rudeness or damage to property or types of conduct having nothing to do with improperly subjecting certain disabled visitors to electronic metal detection. Her allegations lack specific factual content to allow the Court to infer that any of the State Defendants named in Count Two, including Richard and Jane Roes 1-20, are liable under this theory of supervisory liability. Because the Court

determines that Count Two should be dismissed for failure to state a claim, it does not reach the alternative assertions as to qualified immunity or "absolute quasi-judicial immunity."

### C. *Americans with Disabilities Act ("ADA"), Title II*

In Count Three, Carter has sued all Defendants in their individual and official capacities. Under Title II of the ADA, discrimination by public entities is prohibited:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The term "public entity" is defined in § 12131(1)(A) and (B) as

> any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government.

By definition, then, individuals sued in their individual capacities are not public entities. Count Three will proceed only against the State of Maryland and the other State Defendants in their official capacities—the latter because an official-capacity suit is effectively a suit against the entity for which the official-capacity defendant serves as an agent.[2]

The State Defendants have asserted qualified immunity to Count Three, but because they may only be sued in their official capacities, they are not entitled to claim it. Qualified immunity does not apply to suits against individuals sued in their official capacities. *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985).

Likewise, the concept of quasi-judicial immunity is founded upon the protection of those persons exercising discretion similar to that exercised by a judge, who is protected from *personal liability* for judicial action. *See McCray v. State of Maryland*, 456 F.2d 1, 3 (4th Cir. 1972) ("The public interest in preserving constitutional rights through redress by civil actions is thus

---

[2] The Court notes the obvious redundancy of suing the State as well as the other State Defendants in their official capacities. But redundancy is not impermissible.

limited by the compelling need that judges' discretionary duties shall be discharged with efficiency and not in fear that their decisions may prompt actions against them for personal liability in damages."), *abrogation on other grounds recognized by Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995). *See also Bush v. Rauch*, 38 F.3d 842, 847 n.5 (6th Cir. 1994) (noting Supreme Court's recognition of government officials' need to be able to make impartial decisions without threat of personal liability for actions taken pursuant to official duties).  Because no State Defendant is suable in his or her individual capacity under Count Three, the personal liability of State Defendants is not at issue, and the question of quasi-judicial immunity is moot with respect to this count.

The State Defendants also assert they have state personnel immunity under Md. Code Ann., Cts. & Jud. Proc. § 5-522(b).  That statute provides protection of state personnel from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence.  This statutory immunity does not apply for at least three reasons.  First, the State Defendants, as noted in the preceding discussions of qualified immunity and quasi-judicial immunity, are not amenable to suit under the ADA in their personal capacities, so the protection from personal liability afforded by section 5-522(b) is unnecessary.  Second, the statute, even if it were applicable generally, only provides immunity for tortious conduct. The State Defendants have provided no authority for the proposition that violation of a federal statute—in this case, the ADA—constitutes a tort under Maryland law.  And third, they have provided no authority for the notion that section 5-522(b) can validly abrogate the ADA's protection for the fundamental Fourteenth Amendment right of access to the courts by disabled persons.

Having resolved the question of whether various immunities apply under Count Three against the State Defendants, the Court is left with Defendants' last argument on this count, *i.e.*,

whether Plaintiff fails to state a claim for relief. A valid claim under Title II of the ADA is comprised of three elements: (1) the Plaintiff has a disability; (2) the Plaintiff is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) the Plaintiff was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Constantine v. Rectors & Visitors of Geo. Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Defendants do not contest either the first or second element. Instead, they rest on a strangely curious argument as to the third element. They claim that, in fact, Carter was afforded access to the courts because, after all, she managed to arrive at the courtroom where her case was being heard. But, surely, the right of access to the courts must include the right to arrive in the courtroom uninjured by courthouse security officers. Otherwise, the right of access is meaningless. The Supreme Court, in addressing the question of reasonable accommodation under § 504 of the Rehabilitation Act, noted that its prior precedent "requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Carter has sufficiently alleged that she was denied meaningful access to the courts on the basis of her disability. Defendants' motion to dismiss Count Three will be denied as to the State and the other State Defendants in their official capacities.[3]

### D. Rehabilitation Act ("RA"), Section 504

In Count Four, Carter has sued all Defendants in their individual and official capacities. Section 504 of the RA, codified at 29 U.S.C. § 794, provides,

---

[3] Defendants make an equally implausible, and even more bizarre, argument that Carter was given alternate screening in the form of the metal detector wand rather than being forced to walk through the metal detector. This assertion reveals a lack of comprehension as to the nature of Carter's disability and what would constitute a *reasonable* accommodation for it since it is abundantly clear that a metal detector wand presents the same risk of injury to Carter as does a stationary, walk-through metal detector.

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

The rights, remedies, and procedures for violations of § 504 are coextensive with the rights, remedies, and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, which prohibits racial discrimination in federally funded programs and activities. *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002). They are also coextensive with the rights, remedies, and procedures for violations of the ADA, *id.*, which is interpreted consistently with the RA where appropriate, *see Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999). No clear statement has been made by the Fourth Circuit as to whether an individual may be held liable in his individual capacity under the RA, but analogous precedent counsels against it.

Section 504 of the RA was enacted pursuant to Congress's power under the Spending Clause. *Constantine*, 411 F.3d at 491. The Supreme Court has described the similar legislation under Title VI of the Civil Rights Act of 1964 as "'much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" *Gorman*, 536 U.S. at 186 (alteration in original; emphasis omitted) (citing *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). Carter has made no allegation to support an inference that any of the individual State Defendants personally accepted any federal funds that would qualify any one of them as a recipient of funds within the meaning of the RA and that would, in turn, bind them to a contract with the federal government not to discriminate on the basis of disability. In the *Baird* case, the Fourth Circuit declined to recognize a cause of action under Title II of the ADA against private individuals for either discrimination or retaliation. 192 F.3d 462 at 471-72. Construing the RA to permit suit against individuals in their individual capacities would result in an obvious incongruence between the ADA and the RA. Thus, this Court holds that no right of action against an individual in an individual capacity exists under

§ 504 of the Rehabilitation Act. *Accord Bracey v. Buchanan*, 55 F. Supp. 2d 416, 419-20 (E.D. Va. 1999).

Therefore, the proper parties sued in Count Four are the State of Maryland and the other State Defendants in their official capacities. For the same reasons the Court rejected the assertions of qualified immunity, quasi-judicial immunity, and state personnel immunity to Count Three, the Court also rejects them as to Count Four. The remaining contention as to this count is that it fails to state a claim.

The elements of a § 504 claim are slightly different from an ADA claim of disability discrimination since a plaintiff asserting a § 504 claim must prove the discrimination occurred "solely by reason of . . . disability," 29 U.S.C. § 794, rather than simply "by reason of such disability," as required under the ADA, 42 U.S.C. § 12132. Regardless, Carter has adequately alleged a § 504 claim, and Defendants' argument to the contrary is without merit.

### E.   42 U.S.C. § 1983 – Denial of Due Process:  Access to the Courts

Count Five is asserted against all nonentity Defendants in their individual and official capacities. This count may only proceed against the individual State Defendants in their individual capacities, for reasons stated in the Court's discussion of Count Two. These Defendants argue for dismissal of this count because it fails to state a claim for relief and because they are entitled to qualified immunity, quasi-judicial immunity, and state personnel immunity.

The Court notes that Count Five is distinct from Count Two in that Count Two was focused on supervisory liability and Count Five is focused on direct, participatory liability. Carter has failed to allege any facts to support such personal liability on the part of B. Carter, Anderson, Rheubottom, and the Roes. Accordingly, they will be dismissed from Count Five. That leaves John Does 1-20 as parties defendant on Count Five.

Qualified immunity may shield government officials from personal liability in certain circumstances for performing discretionary functions, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Whether such an official may legitimately claim qualified immunity for an allegedly unlawful action "generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Creighton*, 483 U.S. at 639 (citations omitted).

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640.

The first inquiry is whether a constitutional right would have been violated on the facts alleged by the Plaintiff.  Astoundingly, Defendants argue that "there is no constitutional right that would have been violated on the facts alleged by the Plaintiff." (State Defs.' Mot. Dismiss Supp. Mem. 11, ECF No. 18.)  Access to the courts is the constitutional right that Defendants have somehow overlooked, and, without question, it has been clearly established for a long time.  Thus, the first inquiry is resolved in Carter's favor.

The second inquiry is "whether it would be clear to an objectively reasonable officer that his conduct violated the right."  *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (internal quotation marks and citation omitted).  As noted earlier, the right can only be considered meaningful unless it also embraces the right to access the courts without being subjected to severe injury by courthouse security officers.  The complaint alleges that the courthouse security officers were aware of the need for special screening of Carter as evidenced

by her presentation of the special identification card and by the officers' statements. Recognition of the need for special screening showed that the officers also appreciated the need for a disabled person's access to the courts. The qualified immunity defense is not plausible.

Neither is the quasi-judicial immunity defense. Quasi-judicial immunity is derivative of absolute judicial immunity that is accorded to judges performing judicial acts. When this same absolute immunity is claimed by "lesser judicial personnel, it is imperative always to bear in mind the reasons underlying the creation of the immunity shield." *McCray*, 456 F.2d at 3. Thus, the shield protects judicial officers in whom discretion is entrusted so that they are "able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." *Id.*

The *McCray* opinion further noted that this privilege of immunity should be applied sparingly in suits brought under § 1983. *Id.* The Fourth Circuit also noted that the immunity of quasi-judicial officers does not depend upon their formal association with the judicial process but upon their exercise of discretion similar to that exercised by judges. *Id.* For example, prosecuting attorneys and parole board members "require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties." *Id.* But where an official is not called upon to exercise judicial or quasi-judicial discretion, then absolute immunity is denied, regardless of any apparent relationship to the judicial system, as, for example, defense counsel, a court stenographer, or a jailer. *Id.* at 3-4. The Court also observed that a defense closely related to quasi-judicial immunity is afforded to public officers who act in obedience to a judicial order or under the court's direction. *Id.* at 5.

It is clear from Carter's complaint that the courthouse security officers were not exercising any kind of judicial discretion or acting in response to a judge's order when they allegedly interfered with Carter's lawful access to the courts. Consequently, they may not claim

quasi-judicial immunity. Likewise, Defendants have provided no authority to support a claim of state personnel immunity as a defense to a cause of action based upon § 1983. They have not otherwise contested the sufficiency of Count Five under Rule 12(b)(6), and their motion to dismiss this count will be denied.

### F.   Maryland State Law Claims

The State of Maryland asserts that Carter's state law claims against it are barred by the Eleventh Amendment, but as earlier noted, *see* footnote 1, the State voluntarily waived its Eleventh Amendment immunity by removing this case to federal court. The State, however, retains any state law immunities it possessed in Maryland state courts. For reasons stated earlier, Defendants are not protected by quasi-judicial immunity as to any of the counts.

B. Carter, Anderson, Rheubottom, the Does, and the Roes have asserted state personnel immunity. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). That statute provides protection of state personnel from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence. As observed in the discussion regarding immunities in relation to Count Three, this immunity is properly assertable by a defendant sued in his or her individual capacity, but not in one's official capacity. However, before the Court addresses this immunity, it first notes that Carter's complaint simply fails to allege any tortious conduct by B. Carter, Anderson, Rheubottom, or the Roes. Thus, these State Defendants will be dismissed from the remaining counts in which they are named, *i.e.*, Counts Six through Eleven. The Does, then, are the ones to whom state personnel immunity may potentially apply.

Either malice or gross negligence may defeat state personnel immunity. In Maryland, "malice" is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud" and "can exist even when the conduct is

15

objectively reasonable." *Lee*, 863 A.2d at 311 (internal quotation marks and citations omitted). "Gross negligence" is defined as

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007).

None of Carter's allegations support an inference that John Does 1 and 2 acted either with malice or gross negligence. Thus, they are entitled to claim immunity as to Counts Six through Eleven.

John Doe 3 stands on different footing from the other Defendants. Carter has plausibly alleged that John Doe 3 engaged in conduct either with malice or gross negligence when he first agreed with and then specifically disregarded the instruction to provide a pat-down screening to Carter instead of employing metal detectors. He is not entitled to claim state personnel immunity for Counts Six through Eleven. Nevertheless, not all of those counts are viable.

Carter has sufficiently alleged that John Doe 3 denied her access to the courts in violation of the Maryland Declaration of Rights, articles 19 and 24, and negligently failed to provide her with medical care when his electronic wanding caused her to collapse. Thus, Counts Six and Ten are viable as to John Doe 3. In Count Eleven, Carter alleged assault and battery. Assault and battery are common law crimes in Maryland. Assault may be either of two varieties: attempted battery or intent to frighten. *Hickman v. State*, 996 A.2d 974, 981 (Md. Ct. Spec. App. 2010). The first type "requires a substantial step toward the completion of a battery, with the apparent present ability to do so," but does not require the victim's awareness of the impending battery. *Id.* The second type "'requires a specific intent to place the victim in reasonable

16

apprehension of an imminent battery'" and requires awareness by the victim of the impending contact.  *Id.* (citations omitted).  Battery is an "'unlawful application of force to the person of another' . . . [and] is characterized as the unjustified, offensive and non-consensual application of force."  *Id.* (citations omitted).

Carter has pleaded specific factual content for the Court to infer that John Doe 3 committed the attempted-battery form of assault on Carter in the March 2012 incident, but not the intent-to-frighten kind.  Defendants contend that Carter was not touched, and therefore no battery occurred, but it is not unreasonable to infer that causing an electrical shock to someone may be regarded as a battery whether or not John Doe 3 ever laid a hand on her.  With those limitations, Count Eleven may go forward.

Counts Seven, Eight, and Nine are not viable counts.  In Count Seven, Carter has alleged negligence by failing to accommodate her disability, failing to protect her from harm, failing to monitor "themselves and subordinates," and failing to report suspected misconduct.  No authority has been provided to the Court to support these as actionable torts under Maryland law.  Likewise, Count Nine alleges gross negligence in disregard for Carter's rights under federal and state law.  This tort is unknown to the Court.  As for Count Eight, which claims negligent hiring, training, supervision, discipline, and retention, John Doe 3—the only remaining Defendant—was not sued in Count Eight.  Therefore, Counts Seven, Eight, and Nine will be dismissed.

This leaves Count Twelve asserted against the State of Maryland for the acts of B. Carter, Anderson, Rheubottom, the Does, and the Roes.  Since the Court has already determined that only John Doe 3 remains as a Defendant in the state law claims, the Court's focus will be on the viability of Count Twelve against the State for his conduct.

Carter has asserted alternative causes of action in Count Twelve.  These are *respondeat superior*, the State's waiver of immunity in Md. Code Ann., State Gov't § 12-104(a)(1), and

Articles 19 and 24 in the Maryland Declaration of Rights. To the Court's knowledge, *respondeat superior* is not an independent cause of action but is merely a means of establishing vicarious liability for conduct of an employee or agent. Thus, it may have been appropriate for the State to have been sued on the various state law claims against John Doe 3, relying upon *respondeat superior*. But the equivalent was accomplished by suing John Doe 3 in his official capacity. As a result, the Court regards the assertion of *respondeat superior* in Count Twelve as simply pleading liability of the State for John Doe 3's conduct in Counts Six, Ten, and Eleven.

The alternative theory of waiver of immunity is also not a cause of action, although limitations in the statutory waiver of immunity may affect the remedies available. Articles 19 and 24 of the Maryland Declaration of Rights are independent vehicles for suit in Maryland state courts, *see Piselli v. 75th Street Medical*, 808 A.2d 508, 517-18 (Md. 2002); *DiPino v. Davis*, 729 A.2d 354, 371-72 (Md. 1999), and Count Twelve properly asserts causes of action under them.

### G. *Prayer for Punitive Damages*

Carter's prayer for relief includes a request for punitive damages. The State has correctly pointed out that it has not waived its tort liability for punitive damages. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522(a)(1). To the extent that Carter is entitled to punitive damages pursuant to statute, this state code provision would be of no effect.

*V. Conclusion*

      A separate order will issue reflecting the rulings of this memorandum.

DATED this 3rd day of December, 2012.

                                              BY THE COURT:

                                              /s/
                                              James K. Bredar
                                              United States District Judge